## IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF ARKANSAS
### JONESBORO DIVISION

**SHERRY RENEE PRUNTY and**
**GREGORY ALEXANDER PRUNTY, SR.,**
**Individually, and as Special Administrators of the Estate of**
**JAYDEN JESSIE PRUNTY, Deceased, and on behalf of**
**All Wrongful Death Beneficiaries,**

      **Plaintiffs,**

**vs.**

**COREY OBREGON,**
**Individually and in his official capacity**
**as Police Officer of the City of Jonesboro Police Department;**
**RICK ELLIOT, Individually and in his official capacity**
**as Chief of Police for the City of Jonesboro Police Department; and**
**the CITY OF JONESBORO;**

      **Defendants.**

**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

**JUN 0 5 2023**

TAMMY H. DOWNS, CLERK
By:_____
DEP CLERK

**DOCKET NO.**
**JURY DEMANDED**

3:23-CV-136-BSM

---

### COMPLAINT

---

Plaintiffs Sherry Renee Prunty and Gregory Alexander Prunty, Sr., Individually and as

Special Administrators of the Estate of Jayden Jessie Prunty, deceased, and on behalf of all

wrongful death beneficiaries file this action pursuant to 42 USC § 1983 and the Fourth and

Fourteenth Amendments to the Constitution of the United States of America arising out of the

shooting and wrongful death of Jayden Jessie Prunty on February 9, 2022.  For cause of action,

Plaintiffs state as follows:

### I.    PARTIES

1.    Plaintiff Sherry Renee Prunty is an adult resident citizen of the State of Arkansas.

She is the natural mother of Jayden Jessie Prunty, deceased. She was appointed Co-Special

This case assigned to District Judge Miller

and to Magistrate Judge Ray

Administrator for the Estate of Jayden Jessie Prunty by the Circuit Court of Craighead County, Probate Division.

2.      Gregory Alexander Prunty, Sr. is an adult resident citizen of the State of Arkansas. He is the natural father of Jayden Jessie Prunty, deceased. He was appointed Co-Special Administrator for the Estate of Jayden Jessie Prunty by the Circuit Court of Craighead County, Probate Division.

3.      Defendant Corey Obregon ("Officer Obregon" or "Defendant Obregon") is, upon information and belief, an adult resident citizen of the State of Arkansas.  At all times pertinent hereto, Defendant Obregon was an employee and officer with the City of Jonesboro Police Department, acting under the color of state law and within the course and scope of his employment with the Jonesboro Police Department.  Plaintiffs are bringing this action against Defendant Obregon in both his individual capacity and in his official capacity as an officer for the City of Jonesboro Police Department.  He may be served with process at 1001 South Caraway Road, Jonesboro, AR 72401, or alternatively at his residence.

4.      Defendant Rick Elliot ("Chief Elliot" or "Defendant Elliot") is, upon information and belief, an adult resident citizen of the State of Arkansas.  At all times pertinent hereto, Defendant Elliot was an employee and Chief of Police for the City of Jonesboro Police Department, acting under the color of state law and within the course and scope of his employment with the Jonesboro Police Department. Plaintiffs are bringing this action against Defendant Elliot in both his individual capacity and in his official capacity as the Chief of Police for the City of Jonesboro Police Department.  Chief Elliot had the ultimate responsibility within the City of Jonesboro Police Department for the hiring, supervision, training, control, and conduct of the City of Jonesboro police officers, including Officer Obregon. Chief Elliot may be served with process

2

at 1001 South Caraway Road, Jonesboro, AR 72401, or alternatively at his residence.

5.    Defendant City of Jonesboro (the "City") is a municipality, duly incorporated under the laws of The State of Arkansas and, as such, is a political subdivision of the State of Arkansas and, among its other functions, operates and maintains a law enforcement agency known as the Jonesboro Police Department and was the employer of Defendants Obregon and Elliot at all relevant times. The City of Jonesboro is under a duty to operate its policing activities in a lawful manner so as to preserve the peace of the City of Jonesboro and the rights, privileges, and immunities guaranteed and secured to its residents by the Constitution and laws of the United States and/or the State of Arkansas. The City of Jonesboro may be served with this Complaint by serving its Chief Administrative Officer, Brian Richardson, 300 S. Church St., Jonesboro, Arkansas 72401.

## II.    JURISDICTION AND VENUE

6.    This Court has jurisdiction over the action and the parties pursuant to 28 U.S.C. § 1331, as Plaintiffs bring causes of action for the deprivation of individual constitutional rights and privileges under 42 U.S.C. § 1983. The Court has supplemental jurisdiction for Plaintiffs' state law claims under 28 U.S.C. § 1367, as the state law claims form part of the same case and controversy as the Section 1983 claims.

7.    Venue is proper in this Court under 28 U.S.C. § 1391(b) because all or a substantial part of the events and/or omissions giving rise to the causes of action alleged herein occurred within the Eastern District of Arkansas, specifically, Jonesboro, Craighead County, Arkansas.

## III.    FACTS

8.    On the evening of February 9, 2022, Jayden Jessie Prunty, a twenty-two (22) year old African American male, was walking down the side of the road near the 200 block of Spruce

3

Street, Jonesboro, Arkansas. Jayden had just left the Jonesboro Express Mart located at 811 North Church Street, Jonesboro, Arkansas, where he had purchases some snacks.

9.      Jonesboro Police Officer Corey Obregon stopped behind Jayden in a marked Jonesboro Police Department vehicle and exited the vehicle.

10.     At the time Officer Obregon exited his vehicle, he did not have reasonable suspicion to believe Jayden had committed a crime or was in the process of committing a crime.

11.     Defendant Obregon approached Jayden Prunty and stated that he was stopping Jayden because "we are doing a little bit of drug interdiction in the area" and "community policing." As there was no reasonable suspicion or arguable probably cause that Jayden Prunty was committing a crime, this was a consensual encounter.

12.     Despite the lack of any indication that Jayden was engaged in any criminal activity, Officer Obregon demanded that Jayden stop and talk to him. This constituted a seizure within the confines of the Fourth Amendment without reasonable suspicion or arguable probable cause.

13.     Jayden informed Officer Obregon that he had not done anything wrong and that he had just come from the store.

14.     After informing Officer Obregon of these facts, Jayden continued to walk down the side of the road near the 200 block of Spruce Street.

15.     Nevertheless, Officer Obregon continued to follow Jayden and again demanded that Jayden stop and speak with him. Again, this constituted a seizure within the confines of the Fourth Amendment without reasonable suspicion or arguable probable cause.

16.     As Jayden continued to walk legally and peaceably away from Officer Obregon, Defendant Obregon, standing a considerable distance away from Jayden, informed Jayden that he could smell the scent of marijuana on Jayden. Jayden was not in possession of marijuana nor had

4

been in proximity of persons smoking marijuana. Therefore, Defendant Obregon's statements that he smelled marijuana were false and did not provide reasonable suspicion or arguable probable cause that Jayden had committed a crime.

17.     Jayden stated Officer Obregon was lying about smelling marijuana on him, and then stated that Officer Obregon was making him nervous. Jayden, in obvious fear for his safety, started to run away from Defendant Obregon and his unconstitutional attempt to seize him.

18.     Officer Obregon, who was considerably larger and stronger than Jayden, began to chase Jayden. Officer Obregon did not call for backup before or while giving chase.

19.     After a short distance, Defendant Obregon caught up to Jayden and violently threw him to ground. As there was no reasonable suspicion or arguable probable cause that Jayden had committed a crime, this amounted to a seizure in violation of the Fourth Amendment and the use of excessive force.

20.     While Jayden was lying face down on the ground with his arms under his body, Defendant Obregon stood over and on top of Jayden to subdue him.

21.     Officer Obregon demanded that Jayden give his hands to him. Jayden told Officer Obregon that he could not, and Jayden reiterated that he had not done anything wrong.

22.     While Officer Obregon placed his body weight on top of Jayden, Jayden did not attempt to strike or assault Officer Obregon.

23.     At one point Officer Obregon informed Jayden, "If that's a gun, it's not going to end well for you," to which Jayden replied, "I know, I know it's not."

24.     Although Officer Obregon had Jayden subdued face down on the ground, Officer Obregon continued to reach under Jayden to pull away Jayden's arms.

25.     Jayden cried out in pain as Officer Obregon again attempted to rip Jayden's arms

5

and hands from beneath his body.

26.    During this struggle, a gun went off, and a bullet struck Officer Obregon's leg.

27.    Defendant Obregon then rolled Jayden onto his side and fired one shot toward the back of Jayden's head. Upon information and belief, this shot did not strike Jayden.

28.    After pausing, Defendant Obregon deliberately fired a second shot, this time shooting Jayden in the back of his head at close range, killing him.

29.    The events described above were captured on video from Defendant Obregon's body camera. This video footage is available on youtube.com at https://www.youtube.com/watch?v=Mb75CrIITgk (last visited June 2, 2023), and is incorporated herein by reference.

30.    Jayden was later transported to St. Bernard's Medical Center where he was pronounced dead from the gunshot wound to the back of his head fired by Officer Obregon.

31.    Following Jayden's death, the City of Jonesboro Police Department released an unedited version and an edited version (with narration) of Officer Obregon's body camera footage to the public. Even though the footage graphically depicted the brutal death of their son, the City of Jonesboro released this footage without any notice or warning to Mr. and Mrs. Prunty, and the Pruntys were not provided with any opportunity to view the videos prior to their release to the general public.

## IV.    CAUSES OF ACTION

### Count I — Federal Constitutional Violations by Defendant Obregon.

32.    Defendant Obregon, through his unlawful and unethical conduct set forth above deprived Jayden Prunty of his clearly established rights and privileges as guaranteed under the

Fourth and Fourteenth Amendment of the United States Constitution, in violation of 42 U.S.C. § 1983.

33.     Defendant Obregon, acting under color of state law, lacked probable cause, reasonable suspicion, or other legal justification to stop or detain Jayden Prunty on February 9, 2022.

34.     Defendant Obregon, acting under color of state law, lacked probable cause, reasonable suspicion, or other legal justification to give chase and apprehend Jayden Prunty with force on February 9, 2022.

35.     Despite the lack of reasonable suspicion or arguable probable cause that Jayden had committed or was about to commit a crime, Defendant Obregon, acting under color of state law, attempted to stop and detain Jayden Prunty without lawful justification and on the basis of false pretenses.

36.     Defendant Obregon, acting under color of state law, created a danger by unlawfully giving chase to and detaining Jayden Prunty and by his improper tactics and actions in subduing and restraining Jayden Prunty. Defendant Obregon did not make any attempt to defuse the situation or attempt to resolve the situation without the use of unlawful lethal force.

37.     Defendant Obregon, acting under color of state law, used unnecessary and unlawful lethal force in shooting Jayden Prunty in the back of his head, killing him.

38.     Defendant Obregon's actions were objectively unreasonable and constituted and improper seizure and the use of excessive force.

39.     Jayden Prunty was peaceably walking down a street in his neighborhood and posed no threat of harm to the public at the time Defendant Obregon encountered him and then unlawfully chased and detained him.

7

40.    Defendant Obregon's actions were a violation of Jayden Prunty's civil rights, including his Fourth Amendment right to be free from unreasonable search and seizure and excessive force and Fourteenth Amendment rights to due process, such rights being clearly established at the time of this incident. Moreover, Defendant Obregon's actions were not in furtherance of any legitimate state interest.

41.    Defendant Obregon committed the above described actions and/or omissions under the color of law and by virtue of his authority as a law enforcement officer and employee of Defendant City of Jonesboro and substantially deprived Jayden Prunty of his clearly established rights, privileges and immunities guaranteed to him as a citizen of the United States in violation of 42 U.S.C. § 1983 and deprived Plaintiffs of the rights guaranteed to them by the Fourth and Fourteenth Amendments of the United States Constitution including, but not limited to:

      a.     Freedom from unreasonable search and seizure;
      b.     Freedom from deprivation of liberty without due process of law;
      c.     Freedom from summary punishment;
      d.     Freedom from the use of excessive and deadly force;
      e.     The right to privacy;
      f.     The right to liberty;
      g.     The right to freely move about.
      h.     The right to freedom from unconstitutional termination of their familial association with their son;
      i.     The constitutional right to the society and companionship of their son;
      j.     Denial of equal protection of the law;
      k.     Freedom from racial discrimination; and
      l.     Freedom from arbitrary governmental activity which shocks the conscience of a civilized society.

42.    As a direct and proximate result of Defendant Obregon's conduct outlined above, Jayden Prunty suffered injuries, including the deprivation of his constitutional rights, physical and mental pain and suffering, and his untimely and wrongful death.  Plaintiffs' are also entitled to an award of attorneys' fees and expenses pursuant to 42 U.S.C. § 1988.

43.    Defendant Obregon's conduct was intentional, malicious, willful, wanton, and/or

reckless and showed a callous disregard of Jayden Prunty's life and civil rights. Defendant Obregon's conduct is shocking to the conscience of ordinary citizens, and therefore sufficient to justify an award of punitive damages.

**Count II — Federal Constitutional Violations by Defendants Elliot and City of Jonesboro.**

44.     Defendants Elliot and the City of Jonesboro were under a constitutional duty to properly hire, provide policy guidance, train, supervise and discipline the members of the JPD to ensure that the policing activities of the JPD are run in a lawful manner, preserving to the citizens of the City the rights, privileges and immunities guaranteed to them by the Constitutions of the United States of America and the State of Arkansas and the laws of the United States of America and the State of Arkansas.

45.     Defendants Elliot and the City of Jonesboro permitted, encouraged, tolerated, and knowingly acquiesced to an official pattern, practice or custom of its police officers, including Defendant Obregon, violating the constitutional rights of the public at large, including Jayden Prunty and the Plaintiffs.

46.     The actions of Defendant Obregon complained of herein were unjustified, unreasonable, unconstitutional, excessive and grossly disproportionate to the actions of the Plaintiffs and Jayden, and constituted an unreasonable search and seizure effectuated through the use of excessive and deadly force and a deprivation of Jayden's rights secured to him by the Fourth and Fourteenth Amendment of the United States Constitution and other federal protected rights.

47.     Defendants Elliot and the City of Jonesboro are directly liable to the Plaintiffs for damages due to following policies, practices and customs of the Jonesboro Police Department which were in effect at the time and which were maintained with deliberate indifference to the

constitutional rights of citizens and which were the underlying cause of the constitutional
violations:

    a.      Failure to provide the Jonesboro Police Department with sufficient funds for proper operation of the JPD;

    b.      Failure to properly screen potential law enforcement officers, including Defendant Obregon, to determine if they were qualified and fit to serve as law enforcement officers with the JPD;

    c.      Failure to properly and adequately train the JPD's officers, including Defendant Obregon, regarding obvious law enforcement activities including, but not limited to: 1) patrolling procedures; 2) traffic stops; 3) *Terry* stops; 4) reasonable suspicion; 5) probable cause; 6) misdemeanor stops; 7) felony stops; 8) use of force; 9) use of deadly force; 10) use of firearms and intermediate force weapons; 11) apprehending/arresting suspects; 12) arresting procedures; 13) completion of reports and collection of evidence; 14) investigating officer compliance with policy and procedure and critical incidents; 15) monitoring officer compliance with policy including; 16) early warning systems; 17) racial profiling; and 18) civil rights laws and violations.

    d.      Failure to properly and adequately supervise and discipline the JPD's officers, including Defendant Obregon, regarding obvious law enforcement activities including, but not limited to: 1) patrolling procedures; 2) traffic stops; 3) *Terry* stops; 4) reasonable suspicion; 5) probable cause; 6) misdemeanor stops; 7) felony stops; 8) use of force; 9) use of deadly force; 10) use of firearms and intermediate force weapons; 11) apprehending/arresting suspects; 12) arresting procedures; 13) completion of reports and collection of evidence; 14) investigating officer compliance with policy and procedure and critical incidents; 15) monitoring officer compliance with policy including; 16) early warning systems; 17) racial profiling; and 18) civil rights laws and violations.

    e.      Failure to adequately monitor and evaluate the performance of the JPD's officers, including Defendant Obregon, regarding their compliance with the laws and policies, practices and customs with respect to: 1) patrolling procedures; 2) traffic stops; 3) *Terry* stops; 4) reasonable suspicion; 5) probable cause; 6) misdemeanor stops; 7) felony stops; 8) use of force; 9) use of deadly force; 10) use of firearms and intermediate force weapons; 11) apprehending/arresting suspects; 12) arresting procedures; 13) completion of reports and collection of evidence; 14) investigating officer compliance with policy and procedure and critical incidents; 15) monitoring officer compliance with policy including; 16) early warning systems; 17) racial profiling; and 18) civil rights laws and violations.

f.      Failure to adequately respond to and investigate complaints regarding officer misconduct by the citizenry of the JPD's officers, including Defendant Obregon, regarding: 1) patrolling procedures; 2) traffic stops; 3) *Terry* stops; 4) reasonable suspicion; 5) probably cause; 6) misdemeanor stops; 7) felony stops; 8) use of force; 9) use of deadly force; 10) use of firearms and intermediate force weapons; 11) apprehending/arresting suspects; 12) arresting procedures; 13) completion of reports and collection of evidence; 14) investigating officer compliance with policy and procedure and critical incidents; 15) monitoring officer compliance with policy including; 16) early warning systems; 17) racial profiling; and 18) civil rights laws and violations.

48.     Defendants Elliot and Defendant City of Jonesboro had a duty to ensure that the officers of the Jonesboro Police Department were properly trained and supervised.

49.     Defendants Elliot and Defendant City of Jonesboro failed to properly train their officers, including Defendant Obregon, regarding, *inter alia*, the criteria for lawful stops, reasonable suspicion, probable cause, detention, and searches and seizures; chasing and subduing persons; de-escalation; and the use of lethal force. Defendants' intentional, knowing, and/or reckless failures constitute deliberate indifference to the rights of persons with whom the officers come in contact, including Jayden Prunty. Defendants disregarded the known and obvious risks and consequences of failing to train their officers, including Defendant Obregon.

50.     Prior to February 9, 2022, Defendant City of Jonesboro and Defendant Elliot implicitly or explicitly adopted and implemented careless and deliberately indifferent policies, procedures, customs or practices that included authorizing officers of the Jonesboro Police Department to stop citizens for false and/or pretextual reasons, unlawfully detain citizens, and use excessive force. Officer Obregon was following the policies and customs of the City of Jonesboro when he unlawfully stopped, chased, detained, and killed Jayden Prunty on February 9, 2022.

51.     Officer Obregon was acting pursuant to either official police policy or the practice, custom, and usage of the City of Jonesboro and its Police Department during his encounter and

11

killing of Jayden Prunty. In fact, the Defendants Elliot and the City of Jonesboro investigated this incident and cleared Defendant Obregon of all wrong-doing and determined that his actions were in compliance with the policies, practices and customs of the City of Jonesboro.

52.     The City of Jonesboro and Chief Elliot knew, or should have known, that Officer Obregon, in performing policing within the course and scope of his employment, would commit assaults on citizens, in this case, Jayden Prunty.

53.     The City of Jonesboro and Chief Elliot knew, or should have known, that the failure to train, instruct, and supervise its police officers, including Officer Obregon, on a continuing basis, would result in the unconstitutional acts described herein.

54.     The conduct and failures of the City of Jonesboro and Chief Elliot outlined above constituted deliberate indifference and deprived Jayden Prunty of his civil rights, including his Fourth Amendment right to be free from unreasonable search and seizure and excessive force and Fourteenth Amendment rights to due process, such rights being clearly established at the time of this incident.

55.     Defendants City of Jonesboro and Chief Elliot acted under color of law and in their official capacity to deprive Jayden Jessie Prunty of his right to be free from excessive use of force, the right to be free from deprivations of liberty, the right to be free from summary punishment that occurs without due process of law and the right to a fair trial. The Defendants' actions described herein directly and proximately caused the Plaintiffs' damages.

56.     As a direct and proximate result of the policies, practices and customs of Defendants City of Jonesboro and Chief Elliot outlined above, Jayden Prunty suffered injuries, including the deprivation of his constitutional rights, physical and mental pain and suffering, and his untimely and wrongful death. Plaintiffs' are also entitled to an award of attorneys' fees and

expenses pursuant to 42 U.S.C. § 1988.

57.    The conduct of Chief Elliot was intentional, malicious, willful, wanton, and/or reckless and showed a callous disregard of Jayden Prunty's life and civil rights. Defendants' conduct is shocking to the conscience of ordinary citizens, and therefore sufficient to justify an award of punitive damages.

### Count III — State Constitutional Violations by All Defendants.

58.    The conduct and failures set forth above committed by Defendants Obregon, Elliot, and the City of Jonesboro also violated Jayden Prunty's rights under Article II of the Arkansas Constitution and the Arkansas Civil Rights Act, Ark. Code Ann. § 16-123-101 *et seq*.

59.    Article II of the Arkansas Constitution and the Arkansas Civil Rights Act, Ark. Code Ann. § 16-123-101 *et seq.*, guarantees the equality of persons before the law; protects against deprivations of life and liberty without due process of law, cruel and unusual punishment, and summary punishment without a fair trial; and ensures that these rights shall remain inviolate to any other laws or actions of the government.

60.    Jayden Prunty's constitutional rights were clearly established at the time of the alleged violations, and Defendants' actions were not in furtherance of a legitimate state interest.

61.    As set forth above, Defendants, while acting under the color of law, deprived Jayden Prunty of his constitutional rights.

62.    As a direct and proximate result of the conduct of Defendants set forth above, Jayden Prunty suffered injuries, including the deprivation of his constitutional rights, physical and mental pain and suffering, and his untimely and wrongful death.  Plaintiffs' are also entitled to an award of attorneys' fees and expenses pursuant to Ark. Code Ann. § 16-123-105.

63.    The conduct of Defendants was intentional, malicious, willful, wanton, and/or

reckless and showed a callous disregard of Jayden Prunty's life and civil rights. Defendants' conduct is shocking to the conscience of ordinary citizens, and therefore sufficient to justify an award of punitive damages.

### Count IV — Negligence by All Defendants.

64.     Defendant Obregon owed Jayden a duty to exercise reasonable due care under the circumstances.  As set forth above, Defendant Obregon breached this duty, which directly and proximately caused injury and death to Jayden Prunty. Defendant Obregon's acts and omissions constitute negligence, gross negligence, and willful, wanton, and malicious conduct for which punitive damages are appropriate. Defendant City of Jonesboro is liable for the negligent acts and omissions of its employee, Defendant Obregon.

65.     Defendants City of Jonesboro and Chief Elliot committed acts and omissions that constitute negligence by:

a.     hiring and retaining Defendant Obregon who they knew or should have known subjected members of the public, including Jayden Prunty, to unreasonable risk of harm;

b.     failing to properly train and supervise Defendant Obregon;

c.     failing to have proper and necessary rules, regulations, guidelines, policies, and/or procedures in place to protect members of the public, including Jayden Prunty;

d.     failing to ensure that their officers follow proper and necessary rules, regulations, guidelines, policies, and/or procedures to protect members of the public, including Jayden Prunty;

e.     failing to exercise due care under the circumstances; and

f.     such other acts of negligence that may be shown at trial.

66.     The negligence acts and omissions of the Defendants City of Jonesboro and Chief Elliot directly and proximately caused injury and death to Jayden Prunty. These acts and omissions

constitute negligence, gross negligence, and willful, wanton, and malicious conduct for which punitive damages are appropriate.

### Count V — Tort of Outrage by Defendants Elliot and City of Jonesboro.

67.    Defendants Elliot and City of Jonesboro released to the general public videos graphically depicting the brutal death of Jayden Prunty. Defendants released this footage without any notice or warning to Sherry Renee Prunty and Gregory Prunty, Sr., and the Pruntys were not provided with any opportunity to view the videos prior to their release to the general public.

68.    Defendants Elliot and City of Jonesboro intended to inflict emotional distress or knew or should have known that emotional distress was the likely result of their conduct.

69.    The conduct of Defendants Elliot and City of Jonesboro in releasing these videos in this manner constitutes extreme and outrageous conduct that is beyond all possible bounds of decency and is utterly intolerable in a civilized community.

70.    Foreseeably, the conduct of Defendants Elliot and City of Jonesboro caused Sherry Renee Prunty and Gregory Prunty, Sr. distress.

71.    The emotional distressed sustained by Sherry Renee Prunty and Gregory Prunty, Sr. was and is so severe that no reasonable person could be expected to endure it.

72.    Accordingly, Sherry Renee Prunty and Gregory Prunty, Sr. are entitled to an award of damages for the distress they suffered as a result of Defendants' outrageous conduct.

### Count VI — Wrongful Death.

73.    Plaintiffs Sherry Renee Prunty and Gregory Alexander Prunty, Sr., Individually and as Special Administrators of the Estate of Jayden Jessie Prunty, deceased, and on behalf of all wrongful death beneficiaries, pursuant to Ark Code § 16-62-101 and 16-62-102 are entitled to

15

damages as a result of the wrongful death of Jayden Jesse Prunty.

74.     All wrongful death beneficiaries and survivors are entitled to recover any and all damages recoverable under the wrongful death statutes, Ark Code § 16-62-101 and 16-62-102, for the death of Jayden Jesse Prunty.

## V.     DAMAGES

75.     As a direct and proximate result of the acts and/or omissions of Defendants set for above, Jayden Jessie Prunty was killed on February 9, 2022.  The injuries for which Plaintiffs seek compensation include, but are not limited to:

(a)     deprivation of Jayden Prunty's civil rights;

(b)     Jayden Prunty's physical and mental pain and suffering;

(c)     Jayden Prunty's loss of earning capacity/income;

(d)     Jayden Prunty's loss of life and lossenjoyment of life;

(e)     medical and funeral expenses;

(f)     all other damages available under the Arkansas Wrongful Death Act, Ark. Code Ann. § 26-62-102.

(g)     emotional distress and damages suffered by Sherry Renee Prunty and Gregory Prunty, Sr.;

(h)     the loss of Jayden Prunty's companionship, society, and care;

(i)     punitive damages;

(j)     attorneys' fees and expenses; and

(k)     any other actual or special damages Plaintiffs are entitled to under the law.

## WHEREFORE, PREMISES CONSIDERED, PLAINTIFFS PRAY THAT:

1.     Defendants be served with a copy of the Complaint in this matter;

16

2.      Plaintiffs be awarded compensatory damages in an amount of $10,000,000.00 or

an amount the jury may determine just and proper under the circumstances and/or which may be

permitted by law;

3.      Plaintiffs be awarded all damages properly recoverable under federal and Arkansas

law; and

4.      Plaintiffs be awarded post-judgment interest as well as all discretionary costs and

such other relief, both general and special, to which they may be entitled.

**PLAINTIFFS DEMAND THAT THIS CASE BE TRIED BY A JURY.**

Respectfully Submitted,

BURCH, PORTER & JOHNSON, PLLC

R. Porter Feild (#08113)
Charles Silvestri Higgins (#2023086)
130 N. Court Avenue
Memphis, TN 38103
(901) 524-5000
pfeild@bpjlaw.com
chiggins@bpjlaw.com

17